**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:20-cv-00109-LLK**

**THOMAS L. ROSS**                                                                                                                          **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. The fact and law summaries of Plaintiff and the Commissioner are at Doc. 17 and Doc. 20. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 13].

Plaintiff presents two arguments. [Doc. 17]. Because the arguments are unpersuasive and the ALJ's decision is supported by substantial evidence and is in accord with applicable legal standards, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**Plaintiff's medical impairments and disability claim**

According to Plaintiff:

The medical evidence of record reveals treatment for multiple orthopedic and medical issues from many different medical providers including emergency room departments, state mental health facilities, and private physicians.
…
In [Plaintiff's] case, he has multiple orthopaedic issues which developed over many years. He had a fractured clavicle which required plate fixation, a fractured wrist which required a plate and screws. He has shoulder and/or cervical impairments which cause radicular symptoms into his upper extremities. He has a gunshot wounds to a finger and one to his lower leg and foot which result in loss of sensation in parts of the damaged foot. He has not been treated for all these impairments by a single physician, or even a couple of physicians.

[Doc. 17 at PageID.1620].

On February 7, 2017, Plaintiff filed a claim for Title II (disability insurance) benefits, with an alleged onset of disability date of January 1, 2013, and a date last insured of September 30, 2014. [Doc. 12 at PageID.65, 67]. Plaintiff also filed a claim for Title XIV (supplemental security income) benefits. *Id.*

### The ALJ's decision

On February 26, 2019, the ALJ issued the Commissioner's final decision, denying Plaintiff's disability claims based on a finding that (through February 26, 2019) Plaintiff retains the ability to perform a significant number of light jobs in the national economy.

The ALJ's decision followed the 5-step sequential evaluation process, which applies in all Social Security disability cases:

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2013, when he alleges that he became disabled. [Doc. 12 at PageID.67]. Second, the ALJ found that Plaintiff has the following severe, or vocationally significant, impairments: "degenerative disc disease, fracture of lower extremity, and depressive and impulse control disorders." *Id.* at PageID.68. Third, the ALJ found that Plaintiff does not have an impairment satisfying the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at PageID.69.

As required in any case that advances beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC). The ALJ found that, physically, Plaintiff has an RFC:

> … to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant [may] never climb ladders/ropes/scaffolds but may frequently climb ramps/stairs. He may frequently balance. He should avoid all exposure to hazards."

*Id.* at PageID.70. The ALJ found that, mentally, Plaintiff:

> … can understand and remember simple and detailed instructions and procedures. He can sustain attention and consistent effort and pace for simple tasks requiring little independent judgment and involving minimal variations and do so for extended periods of 2-hour segments without an unreasonable number or length of rest periods while maintaining regular attendance and being punctual within customary tolerances. He can interact occasionally as needed for task completion with supervisors and co-workers (at least once up to 1/3 of the time) and sufficiently for task completion. He can interact occasionally (at least once up to 1/3 of the time) with the public, and without need for special supervision, as well as with adequate capacity for responding

appropriately to criticism from supervisors and working with or near others without undue distraction.

*Id.*

Fourth, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id.* at PageID.74. Fifth, the ALJ found that Plaintiff is not disabled because there exist a significant number of light jobs in the national economy that he could perform. *Id.* at PageID.75. Specifically, the ALJ accepted the testimony of the vocational expert (VE) that an individual with Plaintiff's RFC could "perform the requirements of representative [light] occupations" such as bakery racker, bottling line inspector, and laundry folder. *Id.*

**Although Plaintiff represented himself, the ALJ adequately developed the record.**

Plaintiff's first argument is that the ALJ had a heightened duty to develop the record in his case because he did not have legal representation, and "the ALJ's failure to develop the record denied [him] a full and fair hearing." [Doc. 17 at PageID.1616].

An ALJ's duty to develop the record has been described as "heightened" when a claimant is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

In this case, the administrative hearing lasted 1 hour and 14 minutes, and the ALJ heard testimony from Plaintiff, Plaintiff's mother, and Plaintiff's friend. [Doc. 12 at PageID.83-134]. There is no indication that Plaintiff was incapable of presenting an effective case. In any event, for the reasons below, even if the ALJ had a heightened duty to develop the record, the ALJ adequately developed the record.

Plaintiff contends that the ALJ engaged in the type of "superficial questioning of inarticulate [i.e., unrepresented] claimants" regarding what they can still do despite their impairments of which the Sixth Circuit has disapproved. *Id.* at PageID.1616 quoting *Lashley v. Sec'y*, 708 F.2d 1048, 1052 (6th Cir. 1983).

There is no bright line test for determining whether, in a case of self-representation, an ALJ failed to develop the record adequately. *Lashley*, 708 F.2d at 1052. When faced with such a question, a reviewing court's decision must be on a case by case basis. *Id.* For the reasons below, a comparison of the facts of this case and other cases cited by Plaintiff reveals no persuasive basis for concluding that the ALJ failed to develop the record adequately.

In support of his argument that the ALJ failed to develop the record adequately, Plaintiff relies on *Lashley* and *Thrasher v. Comm'r*, No. 1:12-CV-151, 2013 WL 486123 (S.D. Ohio Feb. 6, 2013) (report adopted).

*Lashley* is distinguishable from the present case for three reasons. First, while the hearing in *Lashley* lasted only 25 minutes, in the present case, the hearing lasted 1 hour and 14 minutes, and the ALJ heard testimony from Plaintiff, Plaintiff's mother, and Plaintiff's friend. [Doc. 12 at PageID.83-134].

Second, while the ALJ in *Lashley* engaged in "superficial questioning," 708 F.2d at 1052, which did not bear on the important question of Lashley's RFC, the ALJ in this case asked the following questions:

> [T]ell me [what is] the most significant issue, right now, that keeps you from being able to do any work-related activities? … [W]hat other medical issues are there, … that would cause you not to be able to do any work? … [T]ell me about the injuries you had in that [motorcycle] accident and how they affect your ability to do anything? … Do you have any residual effects from the gunshot wound to your right leg? … What about the [injury] to your fingers on your left hand? … With the degenerative disc disease, who do you see for your back problems? … Have you had any emergency room visits for other items? … Any other physical or mental health issues that you want to tell me about today? … [W]hen's the last time you had a migraine?

[Doc. 12 at PageID.109-17].

Third, while the ALJ in *Lashley* found "no severe [i.e., vocationally significant] impairment," 708 F.2d at 1053, the ALJ in this case recognized that Plaintiff has multiple severe impairments. *Id.* at PageID.68.

Fourth, while the administrative record in *Lashley* contained "compelling evidence that Lashley suffer[ed] from a permanent, total disability," 708 F.2d at 1053, the record in this case contained substantial evidence supporting the ALJ's RFC finding. Among other things, in determining Plaintiff's RFC,

4

the ALJ gave "great weight" to the June 2017 assessments of the Commissioner's non-examining program physician and psychologist (based on reviewed Plaintiff's medical records). *Id.* at PageID.73-74. *See* 20 C.F.R. § 404.1513a(b)(1) (The Commissioner's "medical or psychological consultants are [deemed to be] highly qualified and experts in Social Security disability evaluation."); *Brown v. Comm'r*, No. 5:19-CV-02135, 2020 WL 5569594, at *6 (N.D. Ohio Sept. 17, 2020) (collecting authorities for the proposition that the opinions of the Commissioner's consultants "may constitute substantial evidence supporting an ALJ's [RFC] decision.").

The present case is also distinguishable from *Thrasher v. Comm'r*, No. 1:12-CV-151, 2013 WL 486123 (S.D. Ohio Feb. 6, 2013) (report adopted), another case cited by Plaintiff. In *Thrasher*, the court held that the ALJ did not develop the record adequately because the ALJ did not obtain certain "relevant evidence" (i.e., treatment records relevant to Thrasher's RFC). 2013 WL 486123, *5. In the present case, in contrast, Plaintiff identifies no medical records, which the ALJ failed to obtain, that are inconsistent with the ALJ's RFC finding.

Although Plaintiff represented himself, the ALJ adequately developed the record.

### The ALJ's not finding a severe reaching, handling, or fingering limitation was, at worst, harmless error.

Plaintiff's second argument is that, in light of his testimony regarding a motorcycle injury and the findings of treating orthopedic surgeon Puneet Bhatia, M.D., the ALJ erred in not finding a severe, or "vocationally relevant[,] impairment or limitation as to reaching, handling, or fingering with one or both upper extremities." [Doc. 17 at PageID.1622].

Plaintiff testified that 13 years ago (i.e., in or around 2005), he had a motorcycle accident in which he broke some ribs and required plates and screws in his left shoulder/clavicle and right wrist. [Doc. 12 at PageID.108, 111].

In March 2016, Dr. Bhatia noted Plaintiff's complaints of left shoulder pain after an inmate fell on him during a recent incarceration. *Id.* at PageID.439-44. Dr. Bhatia found tenderness at the left

5

acromioclavicular joint, diagnosed impingement syndrome, and administered an anti-inflammatory. *Id.* In December 2016, Dr. Bhatia noted Plaintiff's complaints of bilateral radiating shoulder and neck pain, found tenderness upon examination of the cervical spine but intact sensation, normal arm strength, and almost full range of motion. *Id.* at PageID.436-37. Dr. Bhatia explained to Plaintiff that his symptoms were likely related to his cervical spine condition, prescribed Neurontin, and recommended shoulder exercises. *Id.*

Plaintiff carries the burden of proof (at the second step of the sequential evaluation process) to show that he suffers from a severe, or vocationally significant, impairment and that the severity persisted at least 12 continuous months. *Walters v. Comm'r*, 127 F.3d 525, 529 (6th Cir. 1997). In evaluating a claim of error for not finding a severe impairment, the Sixth Circuit applies a harmless error test. *Emard v. Comm'r*, 953 F.3d 844, 852 (6th Cir. 2020). Not labeling an impairment as "severe" does not "constitute reversible error" if the ALJ's decision as a whole indicates the ALJ considered the limiting effects of all severe and non-severe impairments at subsequent steps of the evaluation process. *Id.* (quoting *Maziarz v. Sec'y*, 837 F.2d 240, 244 (6th Cir. 1987)).

At the hearing, Plaintiff did not identify any specific residual effect from the motorcycle accident that was severe and satisfied the 12-month duration requirement. Dr. Bhatia did not assign any specific limitation with respect to Plaintiff's abilities to reach, handle, or finger. In determining that Plaintiff has an RFC for light work, the ALJ gave "great weight" to the June 2017 opinion of the Commissioner's non-examining program physician, Timothy Gregg, M.D. *Id.* at PageID.73-74. Dr. Gregg's opinion, in turn, took into account Dr. Bhatia's medical records and those related to the motorcycle accident. *Id.* at PageID.186-88. The ALJ recognized that physical exam revealed some limited range of motion of the upper extremities with tenderness but observed that Plaintiff demonstrated normal range of motion and no "significant neurologic abnormalities." *Id.* at PageID.72. Therefore, at worst, the ALJ's not finding a severe reaching, handling, or fingering limitation was harmless error.

**ORDER**

Because Plaintiff's two arguments are unpersuasive and the ALJ's decision is supported by substantial evidence and is in accord with applicable legal standards, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

October 28, 2021

Lanny King, Magistrate Judge
United States District Court